[Civ. No. 2711.   Fourth Appellate District.—November 6, 1940.]

LAMONT WILLIAM BOWMAN, Appellant, v. UNION TRUST COMPANY OF SAN DIEGO (a Corporation) et al., Respondents.

Charles Peckham and J. Earl Haskins for Appellant.

Noon & Noon and Sloane & Steiner for Respondents.

BARNARD, P. J.—On April 24, 1925, the plaintiff purchased from three members of the Loperena family two lots in the city of San Diego with certain improvements thereon, including a store building and a house. In addition to the cash consideration he gave back a note secured by a trust

deed on the property, in which the defendant trust company was named as trustee. On January 15, 1938, after steps had been taken to foreclose this trust deed, the plaintiff brought this action for a rescission. He alleged that within three years last past he had discovered that the defendants had breached the contract by failing to credit some of the payments he had made upon the purchase price, offered to reconvey the property upon the repayment to him of the amount he had paid on account of the purchase price, and asked judgment for the total amount he claimed to have paid, with interest from the respective dates of payment.

The main controversy was over a payment of $1,000 made by plaintiff to one of the three owners of the property. This person claimed to be the exclusive owner of an old house situated on the lots and the plaintiff had agreed in writing to give him $1,000 for this house, and $15,000 for his one-half interest in the remainder of the property, contingent upon his being able to purchase the interests of the other two coowners. He left this $1,000 with a bank on this condition, and later agreed to give the other two owners $15,000 for their half interest. Through another agreement and another escrow title to the property was passed to the plaintiff, the named consideration being $30,000, of which $5,000 was paid in cash and a note for $25,000 was given secured by a trust deed. After the latter deal was closed the bank delivered the $1,000 to the one of the three owners who owned the house. In this action the plaintiff claimed that this payment of $1,000 should have been credited upon the trust deed and that he had made certain other payments on the trust deed which had not been credited thereon by the defendants.

The court found in all respects in favor of the defendants, finding, among other things, that the three members of the Loperena family owned this property, with the exception of the house thereon which was owned exclusively by one of them, Martin Loperena; that the plaintiff agreed to purchase the house from Martin for $1,000, and by separate agreement agreed to purchase the remaining interests of the three owners of the property for $30,000; that the trust deed was given as a part of that purchase price; that the $1,000 paid for the house was not a part of the $30,000 to be paid for the remainder of the property, was not to be credited thereon and was not to be credited upon the note and trust deed;

that the defendants had not breached the contract by failing to credit any payments which had actually been made; and that a certain amount was still due on the purchase price of the lots and on the note and trust deed. Judgment was entered in favor of the defendants on October 5, 1938, a motion for a new trial was denied on November 23, 1938, a request for a transcript under section 953a, Code of Civil Procedure, was filed on December 3, 1938, and a notice of appeal was filed on December 20, 1938.

While a clerk's transcript was filed in the trial court and has been brought here, no reporter's transcript was ever certified or filed and the appellant at some time elected to proceed to prepare a bill of exceptions. By successive orders the court extended the time in which to prepare and file such a bill of exceptions to December 30, 1938, to January 28, 1939, to February 27, 1939, to March 29, 1939, and to April 26, 1939. On the next day, April 27, 1939, a proposed bill of exceptions was served and filed. Thereafter the respondents moved to strike the proposed bill of exceptions and to terminate the proceedings for a settlement thereof on the ground that the proposed bill was improper and sham, and that it failed to show any attempt to prepare a proper bill of exceptions. The appellant moved for relief under section 473 of the Code of Civil Procedure. The court granted the motion for relief and on May 23, 1939, gave the appellant until June 9 to amend and to file a proper bill of exceptions. This was not done and on June 20, 1939, the trial judge notified the appellant that the order of May 23 had not been complied with, that he would give him until June 27, 1939, within which to prepare a proper bill of exceptions and that upon his failure so to do his proceedings for the preparation of a record would be terminated. No further bill of exceptions was filed and on June 26, 1939, the appellant filed notice of a motion for an order settling the bill of exceptions which had already been proposed. This motion was argued by counsel for both sides on June 28, 1939, and was denied. On June 29, 1939, the court entered a formal order terminating proceedings for the settlement of a bill of exceptions. From this order the plaintiff has also appealed.

In support of this second appeal the appellant has filed a clerk's transcript covering the period from December 2, 1938, to the date of the filing of notice of appeal from the order

terminating proceedings for the preparation of a record. There is no certification by the trial judge who made the order and there is no bill of exceptions or other authenticated record in support of the appeal from the order terminating proceedings, or showing what papers or matters were brought to the attention of the court or considered by it in connection with the hearing which resulted in the order thus appealed from.

Attached to this second clerk's transcript, however, is a typewritten copy of the proposed bill of exceptions and proposed amendments in connection with the appeal from the judgment. This proposed bill of exceptions is in two volumes. The first volume, containing 374 pages, includes, among other things, full copies of a great many purported exhibits, the major portions of which have no bearing on this appeal; a deposition containing 75 pages copied word for word; excerpts from the testimony of certain witnesses; and 94 exceptions, many of them trivial in nature and most of which are not so connected with the matters to which they relate that it can be told what error is claimed. It also contains frequent references for further particulars to volume II which is a partial reporter's transcript containing 437 pages which the court reporter certifies to be a true copy of the testimony of certain named witnesses. No other record is before us. The appellant has submitted both appeals upon this record.

In connection with the appeal from the order terminating proceedings no attempt has been made to present a bill of exceptions or any record of what was presented to or considered by the judge who made that order. It does appear from the clerk's transcript that extensions of time in which to prepare a bill of exceptions were given to the appellant over a period of four months, several of which were forbidden by statute. (Sec. 1054, Code Civ. Proc.) After the time thus granted had expired the proposed bill of exceptions, which is now presented here, was filed. While this document omits many things, as pointed out in the amendments offered, it is some 800 pages long and contains hundreds of pages of matter which a casual inspection discloses should not be in a bill of exceptions. While the real issues which the appellant has presented in his opening brief, which incidentally contains more than 400 pages, are few and simple no attempt was apparently made to eliminate immaterial

matter and prepare and present a bill of exceptions with a reasonably concise summarization of the issues and proceedings in connection with which error is claimed and the evidence relied on. It can neither be held that it was the duty of the trial judge to accept and settle this bill of exceptions as presented nor to himself undertake the task of preparing a proper record. ■ Four weeks after the trial judge instructed the appellant to do this nothing had been done and the court then notified the appellant that if it was not done within another week the proceedings would be terminated. Nothing was then done and on the final hearing, June 28, the appellant was still asking the court to accept and settle this same bill of exceptions. Under the circumstances, the trial judge was justified in terminating the proceedings. (*Poe* v. *Donley*, 61 Cal. App. 550 [215 Pac. 399].)

Turning to the appeal from the judgment, the appellant is in no better position if we accept the proposed bill of exceptions as a proper record and consider this appeal on its merits. Unsatisfactory and voluminous as the purported record is, a casual inspection thereof discloses that the court's findings are supported by evidence which was received. While this is admitted by the appellant in his opening brief he contends that a part of this evidence was inadmissible because it was parol evidence which was received and accepted as varying the terms of a written instrument. In this connection it is contended that the house which the appellant separately agreed to buy for $1,000 from one of the owners was, in law, a part of the real estate; that it could not, therefore, have been the exclusive property of one of the three owners; that the $1,000 paid for this house was necessarily a part of the consideration in the second transaction whereby he purchased the remaining interests of all three owners; that the escrow instructions superseded all previous negotiations; that these escrow instructions did not mention the house in question; and that it follows that it was error for the court to admit parol evidence ''to show a different consideration than that set forth in the final escrow instructions''.

■ Ordinarily, such a structure as a house becomes a part of the realty upon which it stands, but there can be no question that it may be treated as personal property as between persons who deal with it as such. ■ The appellant so

dealt with it and got what he bargained for. In fact he tore the house down and no one ever objected. Having been told of the situation he bought the house from one of the owners and bought the remainder of the property from all three owners in separate deals under two written agreements. The $1,000 was put into a separate deposit before the other deal was closed and before the appellant executed a note and trust deed for the balance of the purchase price on the remainder of the property. In fact he is himself attempting to vary the terms of the note and trust deed by introducing parol evidence to the effect that he did not owe the amount of the note at the time it was executed, and that he had already paid $1,000 which should have been applied upon that indebtedness. Not only were there two deals and two written contracts separately handled through separate escrows, but the appellant in bringing this action for a rescission upon these grounds opened up the question of consideration for the purchase and sale of these lots and for the trust deed given in part payment therefor, and the respondents were entitled to meet the question of consideration thus raised. This they did by evidence that the total purchase price for all of the property, including the house, was $31,000, and not $30,000 as claimed by the appellant. ▇ It is well settled that the question of consideration may always be inquired into and that the actual consideration of a contract may be shown by parol evidence even though a different consideration appears in the writing. (Sec. 1962, subd. 2, Code Civ. Proc.; *Sandrini* v. *Branch*, 32 Cal. App. (2d) 707 [90 Pac. (2d) 593].)

Since the evidence to which the appellant objects was properly admitted, the contention that the court's findings are unsupported by the evidence is without merit. With this issue of law decided against the appellant, the other questions raised become immaterial and require no consideration.

For the reasons given, the judgment and order appealed from are each affirmed.

Marks, J., and Griffin, J., concurred.